**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAMUEL SHANKS,<br><br>       Plaintiff,<br><br>   v.<br><br>INTERNATIONAL UNION OF<br>BRICKLAYERS AND ALLIED<br>CRAFTWORKERS,<br><br>       Defendant. | Civil Action No. 23-0311 (CKK) |

**MEMORANDUM OPINION & ORDER**
(July 7, 2026)

In this action, *pro se* Plaintiff Samuel Shanks alleges that his former employer discriminated against him and retaliated against him for engaging in protected activity, culminating in his termination in October 2021. Mr. Shanks has filed a proposed amended complaint, which the Court construes as a motion for leave to amend his operative complaint. The Defendants oppose this motion,[1] and Mr. Shanks has filed a reply. Upon consideration of the parties' submissions,[2] the relevant legal authority, and the entire record, the Court shall **GRANT IN PART** and **DENY IN PART** Mr. Shanks's motion. The Court shall **GRANT** leave to amend the operative complaint to (1) add Mr. Shanks's newly proposed factual allegations in support of his claims of race discrimination and (2) add a new race discrimination claim under 42 U.S.C. § 1981. The Court shall otherwise **DENY** leave to amend.

---

[1] The Court uses the term "Defendants" to refer collectively to current Defendant International Union of Bricklayers and Allied Craftworkers ("BAC") and two individual employees of BAC who Mr. Shanks proposes to join as parties.

[2] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto: Mr. Shanks's Proposed Amended Complaint, Dkt. No. 43; the Defendants' Opposition to the Plaintiff's Motion for Leave to Amend Complaint, Dkt. No. 44; and Mr. Shanks's Reply in Support of the Motion for Leave to Amend Complaint, Dkt. No. 45. In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

### I. BACKGROUND

Plaintiff Samuel Shanks was employed in the accounting department of the International Union of Bricklayers and Allied Craftworkers ("BAC") for more than 20 years. Proposed Am. Compl., Dkt. No. 43, ¶ 1.

In October 2021, BAC terminated Mr. Shanks's employment, citing its policy requiring employees to become vaccinated against COVID-19, which Mr. Shanks had not done by the deadline that BAC set. Proposed Am. Compl. ¶ 21. Mr. Shanks alleges that this policy was "implemented differently than past employment policies" in several respects. *Id.* ¶ 17. Notably, he alleges that Black employees received less advance notice of the new policy than White employees did. *See id.* ¶ 23. He further alleges that BAC's Black employees were denied access to information about the COVID-19 vaccine, including resources that BAC received as part of a partnership with the White House and the U.S. Department of Health and Human Services. *Id.* ¶ 10. Mr. Shanks alleges that BAC's rollout of its COVID-19 vaccine requirement was part of a pattern of discrimination against its Black employees. *See id.* ¶¶ 10–11, 16, 18.

Mr. Shanks also alleges that the Defendants took several actions in connection with his termination that caused him emotional distress and related symptoms and conditions, including post-traumatic stress disorder, panic attacks, and anxiety. Proposed Am. Compl. ¶¶ 49–50. He alleges that the Defendants terminated him "via UPS" and shipped his personal belongings to him "without [a] tracking number," resulting in his belongings "being left out in the rain." *Id.* ¶ 50. He also alleges that BAC subjected him to "surveillance by management" and "proxy targeting of family [and] friends." *Id.*

Mr. Shanks filed an administrative charge of discrimination against BAC with the Equal Employment Opportunity Commission, which was cross-filed with the D.C. Office of Human Rights on April 1, 2022. Proposed Am. Compl. ¶ 19; *see also* Charge of Discrimination, Dkt. No.

20-1 at 22.  In this administrative complaint, Mr. Shanks, who is Black and describes himself as having "pre-existing medical conditions," alleged that he had "been the victim of retaliation" and had "been discriminated against due to [his] race" and "because of [his] disability."  *See id* ¶¶ 19, 22–23, 40; Charge of Discrimination, Dkt. No. 20-1 at 22.

In his description of the particulars of this administrative complaint, Mr. Shanks named three BAC employees including, as relevant here, BAC President Timothy Driscoll.  *See* Dkt. No. 20-1 at 22.  Mr. Shanks alleged that in October 2021, he sent an email to Mr. Driscoll in which he "went into detail [about] racial discrimination" and "requested a reasonable accommodation" regarding BAC's COVID-19 vaccine mandate.  *Id.*  Mr. Shanks further alleged that "[s]hortly thereafter, [he] received a suspension letter and following that . . . a termination letter."  *Id.*  Mr. Shanks also alleged that he had complained to Mr. Driscoll and at least one other executive several months earlier, in March 2021, that he "felt [he] was being treated poorly due to [his] race."  *Id.*  Mr. Shanks received a right-to-sue letter on September 26, 2022.  *See* Proposed Am. Compl. ¶ 20.

Mr. Shanks later filed this action in D.C. Superior Court on December 23, 2022, asserting race, sex, and disability discrimination, hostile work environment, and retaliation claims against BAC under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the District of Columbia Human Rights Act ("DCHRA").  *See* Dkt. No. 1-1 at 4–5.  BAC removed the action to this Court and moved to dismiss the action for failure to state a claim.  *See* Notice of Removal, Dkt. No. 1; Mot. to Dismiss, Dkt. No. 8.  The Court granted that motion.  Order, Dkt. No. 21.  Mr. Shanks appealed this dismissal to the U.S. Court of Appeals for the D.C. Circuit, which summarily affirmed the dismissal of Mr. Shanks's retaliation and disability discrimination claims, and later affirmed the dismissal of his sexual orientation and hostile work environment claims.  *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*

3

("*Shanks I*"), No. 23-7141, 2024 WL 2790385, at *1 (D.C. Cir. May 29, 2024); *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers* ("*Shanks II*"), 134 F.4th 585, 597–98 (D.C. Cir. 2025). However, the D.C. Circuit reversed the dismissal of Mr. Shanks's claims of race discrimination and remanded those claims to this Court for further proceedings. *Shanks II*, 134 F.4th at 598.

Upon remand to this Court, BAC filed an Answer on June 27, 2025, and the Court ordered that "the deadline to join additional parties or amend pleadings" would be August 18, 2025. Answer, Dkt. No. 34; Order, Dkt. No. 40. At Mr. Shanks's request, the Court extended that deadline to August 25, 2025. *See* Minute Order (Aug. 19, 2025).

On the day of the deadline to amend pleadings or join additional parties, Mr. Shanks filed a proposed Amended Complaint. Dkt. No. 43. In this filing, Mr. Shanks proposes to add new factual allegations in support of his Title VII and DCHRA claims; to add a race discrimination claim under 42 U.S.C. § 1981; to join BAC President Timothy Driscoll and BAC Executive Director Candice Dubberly as Defendants; to reassert claims of sex and disability discrimination, retaliation, and hostile work environment; to add new tort claims for "Concealment" or "Fraudulent Misrepresentation" and both intentional and negligent infliction of emotional distress; and to add a claim under the National Labor Relations Act ("NLRA") alleging unlawful retaliation for engaging in protected union activity. *Id.*

The Defendants have filed an opposition to Mr. Shanks's proposed amendment, and Mr. Shanks has filed a reply. Defs.' Opp'n, Dkt. No. 44; Pl.'s Reply, Dkt. No. 45. Mr. Shanks's proposed amendment, which the Court construes as a motion for leave to amend his operative complaint, is ripe for decision.

## II. LEGAL STANDARD

After 21 days have passed since the filing of a responsive pleading or a motion to dismiss, a plaintiff may amend the operative complaint "only with the opposing party's written consent or

the court's leave."  Fed. R. Civ. P. 15(a).  The court "should freely give leave [to amend] when justice so requires," but the court may deny its leave if the proposed amendment would be futile. *See id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A proposed amendment is futile "if the amended complaint would not withstand a motion to dismiss."  *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim clears this hurdle "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  In this analysis, "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

Although the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).  Similarly, courts do not assume the truth of a complaint's legal conclusions.  *Id.*

In this case, Mr. Shanks is proceeding *pro se*.  The pleadings of *pro se* litigants are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  When evaluating a

5

*pro se* complaint, the Court must read that pleading "'in light of' all filings" in the case and decide its sufficiency based on "the facts alleged in *all* of [the *pro se* plaintiff's] pleadings." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)). A *pro se* plaintiff may, "in effect, supplement his complaint with the allegations included in his opposition." *Id.*

### III. ANALYSIS

Mr. Shanks's proposed amendments to his complaint properly add new factual allegations in support of his race discrimination claims and one new cause of action arising from those claims. The Defendants do not oppose those proposed amendments, and the Court shall allow them. However, Mr. Shanks's proposed amendments also seek to assert new causes of action that are not included in his currently operative complaint. These proposed amendments do not state claims upon which relief can be granted under the additional causes of action he has proposed. The Court shall therefore deny leave to add these causes of action because they would not withstand a motion to dismiss. Accordingly, the Court shall **GRANT IN PART** and **DENY IN PART** Mr. Shanks's motion for leave to amend his complaint.

> **A.     The Court shall allow Mr. Shanks's proposed amendments related to his race discrimination claims, which are unopposed.**

The Defendants do not object to Mr. Shanks's proposal to amend his complaint to add factual detail in support of his Title VII and DCHRA claims related to his termination. Defs.' Opp'n at 1, 3. The Defendants also do not object to Mr. Shanks's proposal to assert a new claim under 42 U.S.C. § 1981 alleging race discrimination in connection with his termination, provided that the Section 1981 claim is properly construed as an allegation of intentional discrimination rather than a disparate-impact claim. *Id.*; *see Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005) (explaining that a Section 1981 claim requires a showing of "intentional discrimination").

Accordingly, the Court shall **GRANT IN PART** Mr. Shanks's motion. Specifically, the Court shall allow Mr. Shanks's proposed amendments to the factual allegations supporting his disparate-treatment and disparate-impact race discrimination Title VII and DCHRA claims, as well as his new disparate-treatment claim under Section 1981. Because the Defendants have not objected to Mr. Shanks's inclusion of two senior BAC employees, Mr. Driscoll and Ms. Dubberly, as individual Defendants to his Section 1981 claim, the Court shall allow Mr. Shanks to add a Section 1981 claim against these individuals. *See Brown v. Children's Nat. Med. Ctr.*, 773 F. Supp. 2d 125, 135–36 (D.D.C. 2011) (PLF) (explaining that Section 1981, unlike Title VII, allows for personal liability for individuals with supervisory authority who are personally involved in discriminatory activity that violates its provisions); *see also Tnaib v. Document Techs., LLC*, 450 F. Supp. 2d 87, 92 (D.D.C. 2006) (RMU) (explaining that although mere "co-workers" cannot be liable under Section 1981, "individuals with supervisory authority" may be held liable).

### B. Because Title VII does not provide for individual-capacity liability, Mr. Shanks's proposed Title VII claims against individual employees are futile.

Mr. Shanks also proposes to join Mr. Driscoll and Ms. Dubberly as individual defendants to his Title VII claim. *See* Dkt. No. 43 ¶¶ 1, 5–6. As the Defendants correctly note, Title VII does not impose liability on an employer's agents in their individual capacities. Defs.' Opp'n at 4; *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1011 (1995). Although a plaintiff may name an individual employee as a defendant in a Title VII suit, "that employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII." *Gary*, 59 F.3d at 1399. A claim against such an employee "necessarily merges with" the corresponding claim against the employer. *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001). Accordingly, only BAC may be held liable for Mr.

Shanks's Title VII claim, and his proposed amendments joining Mr. Driscoll and Ms. Dubberly to that claim would not withstand a motion to dismiss.

> **C.     Mr. Shanks's proposed retaliation, sex and disability discrimination, and hostile work environment claims are futile.**

Mr. Shanks next proposes to amend his complaint to reassert retaliation, sex and disability discrimination, and hostile work environment claims. *See* Proposed Am. Compl. ¶¶ 33–44, 47–48 & at 6. The Court shall not allow Mr. Shanks to reassert these claims in his amended complaint because they would not withstand a motion to dismiss.

> 1.      *Res judicata* applies to Mr. Shanks's proposed claims.

The Defendants argue that Mr. Shanks's proposed retaliation, sex and disability discrimination, and hostile work environment claims are barred by the doctrine of *res judicata* because this Court previously dismissed these same claims, and that dismissal was later affirmed, in relevant part, by the D.C. Circuit. Defs.' Opp'n at 5–6 (citing *Shanks I*, 2024 WL 2790385, at *1; *Shanks II*, 134 F.4th at 597–98). The Court agrees.

"Under the doctrine of *res judicata*, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010). This doctrine "plays a central role in advancing the 'purpose for which civil courts have been established,'" which is "'the conclusive resolution of disputes within their jurisdictions.'" *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

Here, most of the conditions for *res judicata* preclusion are clearly satisfied. The first condition is satisfied because Mr. Shanks proposes to reassert the same causes of action that the

8

Court previously dismissed. *See Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (explaining that, under D.C. law, a "cause of action" consists of "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose"). The second condition is satisfied because BAC was a named party at the time of the Court's earlier decision and, as a matter of D.C. law, Mr. Driscoll and Ms. Dubberly were "privies" of BAC for purposes of claims arising from actions they took in their roles as BAC employees. *See Herrion v. Children's Hosp. Nat. Med. Ctr.*, 786 F. Supp. 2d 359, 371 (D.D.C.) (CKK), *aff'd*, 448 F. App'x 71 (D.C. Cir. 2011). The fourth condition is also met: this Court had jurisdiction when it dismissed these claims under Federal Rule of Civil Procedure 12(b)(6), which the D.C. Circuit reinforced by affirming the Court's decision on the merits. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (explaining that "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction").

The only close question is whether this Court's prior dismissal of these claims is still a "final, valid judgment on the merits" following the D.C. Circuit's partial affirmance and partial reversal and remand of this Court's decision. *See Porter*, 606 F.3d at 813.

Multiple courts in this District have concluded that a partial affirmance is a "final" judgment for *res judicata* purposes and have applied the doctrine as a bar to relitigation on remand. *See, e.g.*, *Kissi v. EMC Mortg. Corp.*, 887 F. Supp. 2d 1, 8 (D.D.C. 2012) (RBW); *Jones v. District of Columbia*, 646 F. Supp. 2d 42, 46 (D.D.C. 2009) (RCL); *see also Mazaleski v. Harris*, 481 F. Supp. 696, 698 (D.D.C. 1979) (AER) (concluding that a judgment affirmed on one issue and reversed on others is "entitled to [r]es judicata effect" only as to the issue on which the judgment was affirmed), *aff'd sub nom. Mazaleski v. Schweiker*, 670 F.2d 1235 (D.C. Cir. 1981).

9

However, other courts in this District have framed the effect of a partial affirmance differently, applying the law-of-the-case doctrine rather than *res judicata*. *See, e.g.*, *Cannon v. District of Columbia*, 10 F. Supp. 3d 30, 35–36 (D.D.C. 2014) (ESH), *aff'd*, 783 F.3d 327 (D.C. Cir. 2015). "Under the law-of-the case doctrine, a court should not reopen issues that it decided earlier" in the history of the same case. *Bahlul v. United States*, 77 F.4th 918, 925 (D.C. Cir. 2023). The same rule applies to issues that a reviewing court has decided on appeal, whether "explicitly or by necessary implication." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995).

There is an important distinction between the *res judicata* and law-of-the-case doctrines. When *res judicata* applies, it "bars relitigation not only of matters determined in a previous litigation but also ones that a party *could have* raised." *Nat. Res. Def. Council v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) (emphasis added) (quoting *Nat. Res. Def. Council v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988)). Meanwhile, under the law-of-the-case doctrine, an "[a]ctual decision" resolving the issue is required to preclude relitigation; "it is not enough that the matter *could have* been decided in earlier proceedings." *United States v. Miller*, 890 F.3d 317, 325 (D.C. Cir. 2018) (emphasis added) (quoting 18B Wright & Miller's Federal Practice & Procedure § 4478 (2d ed. 2002)). In short, *res judicata* preclusion sweeps more broadly than the preclusion that runs from law-of-the-case doctrine.

The D.C. Circuit's comments on this issue have been mixed, but they are consistent with the view that a judgment affirmed in part and reversed in part has *res judicata* effect as to the affirmed portion. *See U.S. Indus., Inc. v. Blake Const. Co.*, 765 F.2d 195, 199–200 & n.9 (D.C. Cir. 1985) (concluding that a jury verdict affirmed on appeal was "final" and had *res judicata* effect, notwithstanding the fact that the appellate court reversed part of the trial court's judgment

10

on other grounds).   Although the D.C. Circuit has stated that a trial court's adherence to "unreversed determinations" on remand is "an application of the doctrine of law of the case, rather than *res judicata* or collateral estoppel" when a judgment is "reversed by an appellate court on a single ground," that statement does not rule out the application of *res judicata* to decisions that are *affirmed*, rather than merely "unreversed."   *See Nat'l Ass'n of Broadcasters v. FCC*, 554 F.2d 1118, 1124 n.17 (D.C. Cir. 1976); *see also Steele v. United States*, No. 23-cv-918, 2024 WL 1111639, at *10 n.2 (D.D.C. Mar. 14, 2024) (RCL) (noting tension between the decisions in *U.S. Industries* and *National Association of Broadcasters*), *aff'd*, 144 F.4th 316 (D.C. Cir. 2025).

On balance, this Court agrees with the Defendants that *res judicata* applies here.   The wording of the D.C. Circuit's opinion in this case supports this view.   *See Shanks II*, 134 F.4th at 598.   This opinion states that the court "affirms the *judgments* dismissing" the claims of Mr. Shanks and another *pro se* appellant, aside from the race discrimination claims remanded to this Court.   *Id.* (emphasis added).   This language indicates that the D.C. Circuit viewed these dismissals as final decisions, not mere interlocutory orders that could be revisited later.   *See id.* Giving *res judicata* effect to these dismissals—rather than merely law-of-the-case effect—also appears to be consistent with the greater weight of authority within this District.   *See Kissi*, 887 F. Supp. 2d at 8; *Jones*, 646 F. Supp. 2d at 46.   *But see Cannon*, 10 F. Supp. 3d at 35–36 (applying law-of-the-case doctrine instead).   Finally, and critically, because these dismissals were affirmed, rather than merely left "unreversed" on remand, applying *res judicata* is consistent with Circuit precedent.   *Cf. Nat'l Ass'n of Broadcasters*, 554 F.2d at 1124 n.17.

In sum, this court's prior judgment dismissing Mr. Shanks's retaliation, sex and disability discrimination, and hostile work environment claims is a final judgment entitled to *res judicata* effect.   This judgment therefore bars relitigation of not only the specific claims that Mr. Shanks

11

previously asserted, but also any related claims that he "had an opportunity to litigate" before the original judgment, "even if [he] chose not to exploit that opportunity" in the prior litigation. *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981). Because the retaliation, sex and disability discrimination, and hostile work environment claims that Mr. Shanks now proposes to assert in an amended complaint could have been litigated before the Court's original judgment in this case, those claims are barred by *res judicata* and would not withstand a motion to dismiss. The Court therefore will not allow an amendment to add them.

2.    <u>Mr. Shanks has not alleged post-judgment conduct or later-discovered facts that alter the *res judicata* analysis.</u>

Mr. Shanks argues in his reply that he has alleged "post-appeal conduct, additional retaliatory acts, and facts uncovered since the original dismissal" that make *res judicata* inapplicable here. *See* Pl.'s Reply at 4. However, the only allegation in Mr. Shanks's proposed amended complaint involving facts that post-date this Court's initial ruling is an allegation that, in May 2025, a U.S. Senate subcommittee published a report criticizing federal agencies' warnings regarding the COVID-19 vaccine. *See* Proposed Am. Compl. ¶ 44. In his reply, Mr. Shanks adds one other allegation regarding post-judgment conduct: an allegation that, as of October 2025, the Defendants were "continuing to operate in a hybrid work environment . . . in lieu of in[-]person work," which he argues was "the initial purpose of" BAC's COVID-19 vaccination policy. Pl.'s Reply at 5. Mr. Shanks's allegation about in-person work at BAC may be relevant to his race discrimination claim because it may support an argument that BAC's stated justifications for its policy were pretextual. However, neither of Mr. Shanks's allegations regarding post-judgment conduct cures the futility of his proposed retaliation, sex and disability discrimination, and hostile work environment claims. Because these claims would not withstand a motion to dismiss, the Court will not allow an amendment to add them.

First, as the Court has explained, *res judicata* is applicable here because Mr. Shanks could have raised each of the claims at issue during the earlier phases of this proceeding.  Mr. Shanks is correct that *res judicata* does not necessarily bar claims based on "new facts."  Pl.'s Reply at 4–5. More specifically, *res judicata* "does not preclude claims based on facts *not yet in existence* at the time of the original action."  *City of Port Isabel v. FERC*, 111 F.4th 1198, 1214 (D.C. Cir. 2024) (emphasis added) (quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)), *modified on other grounds on reh'g in part,* 130 F.4th 1034 (D.C. Cir. 2025).  However, it *does* preclude claims of which a party "could have become aware" through the exercise of ordinary diligence. *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009).  As the Court has explained, the relevant question is whether the parties "have had an *opportunity* to litigate" the relevant claims, "even if they chose not to exploit that opportunity" in the prior litigation.  *Hardison*, 655 F.2d at 1288 (emphasis added).  Here, Mr. Shanks has not plausibly alleged or argued that he did not know or could not reasonably have discovered any of the legally operative facts underlying his proposed retaliation, sex and disability discrimination, and hostile work environment claims at the time of filing and litigating his original complaint.  Accordingly, *res judicata* applies.

Second, Mr. Shanks has not alleged any "post-appeal conduct" that affords a viable basis for his employment discrimination and hostile work environment claims.  "The gravamen of any such claim, whether based on a discrete-act or a hostile environment theory, is that the employer's biased conduct impacted the terms and conditions of the plaintiff's employment." *Kabakova v. Off. of Architect of Capitol*, No. 19-cv-1276, 2020 WL 1866003, at *9 (D.D.C. Apr. 14, 2020) (BAH) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).  Mr. Shanks's employment at BAC ended in October 2021.  Accordingly, Mr. Shanks has not alleged any post-

appeal conduct that has "affect[ed] the terms and conditions of [his] employment." *See Burlington*, 548 U.S. at 64; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993) (explaining that the challenged conduct must have "actually altered the conditions of the victim's employment" to constitute a hostile work environment under Title VII). Any allegations of more recent conduct therefore cannot support Mr. Shanks's proposed employment discrimination or hostile work environment claims under Title VII. *Id.*

Third, although Mr. Shanks is correct that a plaintiff may bring a hostile work environment claim "encompassing acts both before and after the filing of administrative charges," that rule does not allow claims to proceed under the circumstances presented here. *See* Pl.'s Reply at 5 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). The rule that Mr. Shanks invokes allows a plaintiff to proceed under Title VII based on a mix of administratively exhausted and unexhausted claims, provided that the unexhausted claims are "'adequately linked' to the exhausted ones." *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 34 (D.D.C. 2019) (CRC) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)). This rule does not alter the baseline requirement that a hostile work environment claim under Title VII must arise from conduct that "affect[s] the terms and conditions of employment." *See Burlington*, 548 U.S. at 64; *Harris*, 510 U.S. at 22. Because Mr. Shanks has not alleged any such conduct here that post-dates the Court's initial judgment, his proposed claims would not withstand a motion to dismiss.

Fourth, and finally, Mr. Shanks has not alleged any post-judgment conduct or later-discovered facts that could support a viable retaliation claim. To state a Title VII retaliation claim, a plaintiff must allege that an employer took "materially adverse" retaliatory actions, meaning actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 64. None of the

allegations in Mr. Shanks's proposed amendments, reply, or his other submissions to date identifies any action taken after this Court's original judgment or any later-discovered facts that could sustain a retaliation claim under this standard.

In sum, Mr. Shanks has not alleged any post-judgment conduct or later-discovered facts that overcome the application of *res judicata*. The Court will allow Mr. Shanks to add his proposed factual allegations to support his race discrimination claims, which are properly before the Court. However, he may not reassert his previously dismissed claims, which are barred by *res judicata* and would not withstand a motion to dismiss. Accordingly, the Court will deny leave to amend to add these claims.

**D.      Each of Mr. Shanks's proposed DCHRA claims against Mr. Driscoll and Ms. Dubberly is either untimely or barred by *res judicata*.**

Mr. Shanks also proposes to join Mr. Driscoll and Ms. Dubberly as individual defendants to his DCHRA claims. *See* Dkt. No. 43 ¶¶ 1, 5–6. Unlike Title VII, the DCHRA does allow for claims against individuals. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 888–89 (D.C. 1998). However, because Mr. Shanks's administrative complaint of discrimination did not toll the statute of limitations for his proposed DCHRA claim as to Ms. Dubberly, his claim against Ms. Dubberly is untimely. Meanwhile, although Mr. Shanks's administrative complaint did toll the statute of limitations for one of his claims against Mr. Driscoll, that claim is barred by *res judicata*. Accordingly, the Court shall deny Mr. Shanks's request for leave to add DCHRA claims against Mr. Driscoll and Ms. Dubberly.

When Mr. Shanks filed his original complaint in this case in December 2022, the DCHRA had a one-year statute of limitations for most discrimination claims. *See* D.C. Code § 2-1403.16(a) (eff. May 2, 2015 to Mar. 20, 2025). As Mr. Shanks correctly notes, the D.C. Council later amended the Act to provide for a two-year statute of limitations, effective March 21, 2025. *See*

Fairness in Human Rights Administration Amendment Act of 2024, D.C. Law 25-300, § 2(f), 72 D.C. Reg. 737, 3662 (Mar. 21, 2025). However, this change is not retroactive. *Rubio v. Credence Mgmt. Sols., LLC*, No. 25-cv-1784, 2026 WL 1173201, at \*5 & n.3 (D.D.C. Apr. 30, 2026) (RBW); *Valentine v. George Washington Univ.*, No. 24-cv-1081, 2025 WL 2029802, at \*5 n.5 (D.D.C. July 21, 2025) (RC); *see also Payne v. District of Columbia*, 722 F.3d 345, 352 (D.C. Cir. 2013) (noting that, under D.C. law, "statutes are to be construed as having only a prospective operation, unless there is a clear legislative showing that they are to be given a retroactive or retrospective effect" (quoting *Wolf v. D.C. Rental Accommodations Comm'n*, 414 A.2d 878, 880 n.8 (D.C. 1980))). Therefore, the one-year statute of limitations applies to this case.

Mr. Shanks argues that the administrative complaint that he filed against BAC in April 2022 with the D.C. Office of Human Rights ("DCOHR") should toll the statute of limitations for his claims against Mr. Driscoll and Ms. Dubberly. Pl.'s Reply at 2–4.

The timeliness of Mr. Shanks's DCHRA claims depends on this tolling issue. In general, the statute of limitations for a DCHRA claim is tolled while an administrative complaint is pending before the DCOHR. *See* D.C. Code § 2-1403.16(a) (eff. May 2, 2015 to Mar. 20, 2025); *Alexander v. Washington Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016). Mr. Shanks was terminated in October 2021, filed an administrative complaint in April 2022, received a right-to-sue letter in September 2022, and filed his civil complaint in December 2022. If the time between April 2022 and September 2022 is tolled, then Mr. Shanks's December 2022 civil complaint was filed within the applicable one-year statute of limitations, and he may amend his complaint to add his related DCHRA claims. *See* Fed. R. Civ. P. 15(c)(1)(b) (providing that an "amendment to a pleading relates back to the date of the original pleading when" it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the

16

original pleading"). However, if that time is *not* tolled, then the one-year statute of limitations expired in October 2022, before Mr. Shanks filed his original complaint, and each of his DCHRA claims would be time-barred.

### 1.    Mr. Shanks's proposed DCHRA claim against Ms. Dubberly is untimely.

The Defendants argue that tolling does not apply to Mr. Shanks's proposed claims against Ms. Dubberly or Mr. Driscoll because Mr. Shanks did not expressly name either of them as respondents in his administrative complaint. Defs.' Mem. at 4–5. As to Ms. Dubberly, the Court agrees. "[W]here a plaintiff's administrative complaint expressly identified discriminatory actions taken by certain defendants but not others, the administrative complaint will not serve to toll the DCHRA's statute of limitations as to claims against those defendants who were not identified in the administrative complaint." *Craig v. District of Columbia*, 74 F. Supp. 3d 349, 367 (D.D.C. 2014) (RC); *see also Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 285 (D.D.C. 2008) (RCL) (concluding that equitable tolling did not apply where defendants had not received "adequate notice and the statutory opportunity to mediate by service of the charges against them as identified respondents"). Because Ms. Dubberly was not identified as a respondent or named at all in Mr. Shanks's administrative complaint, his administrative complaint did not toll his proposed claims against her. Accordingly, those claims are untimely and would not withstand a motion to dismiss.

Mr. Shanks notes that, under the doctrine of equitable tolling, a court can sometimes excuse a plaintiff's failure to file within an applicable statute of limitations. Pl.'s Reply at 3. However, "a plaintiff is not entitled to the benefit of the equitable tolling doctrine when the limitations period has not run by the time the plaintiff discovers all the facts necessary to support [his] claim." *Egilman v. Keller & Heckman, LLP.*, 401 F. Supp. 2d 105, 111 (D.D.C. 2005) (HHK) (citing *Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993)). Here, Mr. Shanks has not alleged or argued that he did not know the facts necessary to articulate his claim against Ms. Dubberly before the

statute of limitations expired.  Accordingly, equitable tolling does not apply, and Mr. Shanks's

failure to file within the limitations period is not excused.

2. Mr. Shanks's proposed DCHRA claim against Mr. Driscoll is timely in part, but it is barred by *res judicata*.

Mr. Shanks's claim against Mr. Driscoll presents a more nuanced issue.  Unlike Ms.

Dubberly, Mr. Driscoll is named in Mr. Shanks's administrative complaint.  As the Court shall

explain, most of the allegations in the administrative complaint are nonetheless not specific enough

to toll a DCHRA claim against Mr. Driscoll.  However, the Court concludes that Mr. Shanks's

administrative complaint did toll one aspect of the DCHRA claim that he now proposes to assert

against Mr. Driscoll.  That claim—an allegation of unlawful retaliation—is therefore timely.

However, the claim is now barred by claim preclusion.  Accordingly, because each of Mr. Shanks's

proposed DCHRA claims is either untimely or precluded, the Court shall deny Mr. Shanks's

motion for leave to amend to add a DCHRA claim against Mr. Driscoll.

As to most of Mr. Shanks's claims against Mr. Driscoll, including his claims of race, sex,

and disability discrimination, the Court agrees with the Defendants that the administrative

complaint did not provide "adequate notice" to Mr. Driscoll that Mr. Shanks was asserting those

claims against him personally.  *See* Defs.' Mem. at 4 n.1; *Zelaya*, 587 F. Supp. 2d at 285.  Mr.

Shanks's administrative complaint does not include any factual allegations against Mr. Driscoll

that would support a claim that Mr. Driscoll personally engaged in discrimination on the basis of

race, sex, or disability.  *See* Charge of Discrimination, Dkt. No. 20-1 at 22.  Accordingly, Mr.

Shanks's administrative complaint did not toll the statute of limitations for those claims, and they

are untimely.  *See Zelaya*, 587 F. Supp. 2d at 285.  As with Mr. Shanks's claim against Ms.

Dubberly, equitable tolling does not apply because Mr. Shanks was aware of the relevant facts

before the limitations period expired.  *See Egilman*, 401 F. Supp. 2d at 111.

However, construing Mr. Shanks's administrative complaint liberally, the Court is satisfied the administrative complaint provided "adequate notice" to Mr. Driscoll that Mr. Shanks was asserting a claim of *retaliation* against him. *Zelaya*, 587 F. Supp. 2d at 285. Mr. Shanks's administrative complaint alleges adverse employment action that occurred "[s]hortly" after Mr. Shanks sent a "separate email" to Mr. Driscoll regarding protected topics, then goes on to state that Mr. Shanks believed he had been "discriminated against . . . in retaliation for engaging in protected activity." *See* Charge of Discrimination, Dkt. No. 20-1 at 22. Although "temporal proximity between a protected activity and adverse action" is not enough on its own to prove retaliation, it "can be sufficient" when "making a *prima facie* case of retaliation." *Dougherty v. Cable News Network*, 396 F. Supp. 3d 84, 104 (D.D.C. 2019) (RC). Because Mr. Shanks's administrative complaint specifically articulates a retaliation claim and alleges that he suffered adverse employment action "[s]hortly" after sending an email to Mr. Driscoll complaining about discrimination, this complaint gave adequate notice to Mr. Driscoll that Mr. Shanks intended to assert a retaliation claim against him. *See* Charge of Discrimination, Dkt. No. 20-1 at 22.

Accordingly, the Court finds that the DCHRA's administrative tolling provision applies to Mr. Shanks's retaliation claim against Mr. Driscoll, and Mr. Shanks's proposed amendment adding that specific claim is not barred by the statute of limitations. *See* D.C. Code § 2-1403.16(a) (eff. May 2, 2015 to Mar. 20, 2025).

However, for the reasons described in the preceding section, Mr. Shanks's retaliation claim against Mr. Driscoll is barred by *res judicata*. Mr. Driscoll is in privity with BAC for purposes of claims arising from actions taken within the scope of his role as a BAC employee. *See Herrion*, 786 F. Supp. 2d at 371. Accordingly, this Court's prior order dismissing Mr. Shanks's retaliation claim against BAC precludes a subsequent retaliation claim against Mr. Driscoll for conduct that

19

is part of the same "transaction, or series of connected transactions, out of which the [original] action arose." *See Stanton*, 127 F.3d at 78. In this case, Mr. Shanks's original civil complaint included an allegation of retaliation that is factually very similar to the one he presented in his administrative complaint and now proposes to reassert in an amendment to his complaint. *See* Compl., Dkt. No. 1-1 at 4–5. This Court's previous dismissal of that claim, which the D.C. Circuit affirmed, precludes Mr. Shanks from relitigating it.

For these reasons, Mr. Shanks's proposed DCHRA claims against Mr. Driscoll would not withstand a motion to dismiss, and the Court shall deny Mr. Shanks's request for leave to amend his complaint to add them.

### E.    Mr. Shanks's proposed allegations of wrongful concealment and fraudulent misrepresentation do not state a claim upon which relief may be granted.

Mr. Shanks next proposes to assert a claim of wrongful "Concealment" or "Fraudulent Misrepresentation" based on an allegation that the Defendants "concealed federal vaccine resources, including a Vaccine Hesitancy Webinar with NIH leadership, from 89% of Black Employees to intentionally impede informed healthcare decisions, thereby forcing minority employees to make medical decisions under duress." Proposed Am. Compl. ¶ 45. Mr. Shanks further alleges that "[t]his concealment purposely caused undue stress, economic harm, and contributed to [his] wrongful termination." *Id.* ¶ 46.

Read liberally, Mr. Shanks's proposed claim is best construed as a claim of a fraudulent misrepresentation or omission under D.C. law. *See Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 45 (D.D.C. 2019) (BAH) (explaining that the several decisions of courts in this District discussing elements of "fraudulent concealment" have generally been applying either Maryland law or a

principle of D.C. equitable tolling doctrine, rather than a freestanding tort of "concealment").[3]

Under D.C. law, the elements of a claim for fraudulent misrepresentations or omissions are that:

> (1) [the defendant] made a false representation of or willfully omitted a material fact; (2) [the defendant] had knowledge of the misrepresentation or willful omission; (3) [the defendant] intended to induce [the plaintiff] to rely on the misrepresentation or willful omission; (4) [the plaintiff] acted in reliance on that misrepresentation or willful omission; and (5) [the plaintiff] suffered damages as a result of that reliance.

*Id.* (quoting *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015)).

A claim for fraudulent misrepresentations or omissions is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Krukas*, 376 F. Supp. 3d at 45. Under these standards, a plaintiff "must state with particularity the circumstances constituting fraud or mistake"—other than "intent" and other "conditions of a person's mind," which "may be alleged generally." Fed. R. Civ. P. 9(b).

Mr. Shanks's proposed claim falls short of these standards. Mr. Shanks alleges that the Defendants "concealed federal vaccine resources" for the purpose of "intentionally imeped[ing] informed healthcare decisions, thereby forcing minority employees to make medical decisions under duress." Proposed Am. Compl. ¶ 45. But he does not plausibly allege that the Defendants intentionally prevented him from accessing the same or substantially similar information elsewhere or that the Defendants' actions caused him damages. Accordingly, although Mr. Shanks's factual allegations regarding federal vaccine resources may be relevant to his race discrimination claims and may properly be included in an amended complaint for that reason, they would not withstand a motion to dismiss for failure to state a claim. Accordingly, the Court shall deny leave to add a new claim of "Concealment" or "Fraudulent Misrepresentation."

---

[3] As the Defendants correctly note, Mr. Shanks's proposed amendments do not state a plausible claim under the elements often cited as constituting "fraudulent concealment," either. *See* Defs.' Opp'n at 7 (citing *Lee v. Bos*, 874 F. Supp. 2d 3, 6 (D.D.C. 2012) (JDB)).

### F.    Mr. Shanks's proposed allegations of negligent and intentional infliction of emotional distress do not state tort claims upon which relief may be granted.

Next, Mr. Shanks proposes to add new counts alleging both negligent and intentional infliction of emotional distress.  Proposed Am. Compl. ¶¶ 49–50.  The factual allegations that Mr. Shanks presents in support of these proposed claims may be relevant to his discrimination claims and may be added to his complaint for that purpose.  *See* Pl.'s Reply at 7–8 (arguing that the proposed allegations regarding the handling of Mr. Shanks's belongings following termination are relevant to substantiate his disparate treatment claims).  However, his allegations do not state independent tort claims under the restrictive standards that apply to negligent and intentional infliction of emotional distress claims.  Accordingly, the Court shall not allow an amendment to add those claims.

To state a claim for negligent infliction of emotional distress under D.C. law, a plaintiff who was not "in danger of physical injury" during the events giving rise to the claim must allege that there is either a "special relationship between the parties" or an "undertaking by the defendant to the plaintiff" that creates a duty to avoid causing emotional harm.  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 802 (D.C. 2011) (en banc).  Specifically, the plaintiff must allege either that the defendant has "an obligation to care for the plaintiff's emotional well-being" or that "the plaintiff's emotional well-being is necessarily implicated by the nature of the defendant's undertaking to or relationship with the plaintiff." *Id.* at 792.  A typical "arm's length" employment arrangement does not create this kind of relationship.  *See Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (RDM).  Although Mr. Shanks had a long tenure at BAC, having worked there for more than 20 years, he has not alleged that he had anything other than an arm's-length employer-employee relationship with any of the Defendants.  His allegation in his reply brief that the Defendants had "knowledge of his medical vulnerabilities" does not alter this

analysis. *See* Pl.'s Reply at 7. Therefore, Mr. Shanks's proposed claim for negligent infliction of emotional distress would not withstand a motion to dismiss.

To state a claim for intentional infliction of emotional distress under D.C. law, a plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013) (citation omitted). The plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 41 (D.D.C. 2018) (RDM) (quoting *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997). This definition sets a "very demanding standard that is only infrequently met." *Id.* (quoting *Holloway v. Howard Univ.*, 206 F.Supp.3d 446, 453 (D.D.C. 2016) (ABJ)) (citation modified). The conduct that Mr. Shanks has alleged does not clear this high bar, and it therefore would not withstand a motion to dismiss.

As with Mr. Shanks's proposed "Concealment" or "Fraudulent Misrepresentation" claims, Mr. Shanks's factual allegations regarding emotional distress may be relevant to his race discrimination claims and may properly be included in an amended complaint for that reason, but they would not withstand a motion to dismiss for failure to state independent tort claims. Accordingly, the Court shall deny leave to add a new claims of negligent or intentional infliction of emotional distress.

### G. The National Labor Relations Board has exclusive jurisdiction over Mr. Shanks's proposed unfair labor practice claim.

Finally, Mr. Shanks proposes to add a claim of retaliation under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.* Proposed Am. Compl. at 6.

As the Defendants correctly note, except in limited circumstances that are not present here, the National Labor Relations Board ("NLRB") has exclusive primary jurisdiction over such claims. *See* Defs.' Opp'n at 9–10 (citing *Price v. Unite Here Loc. 25*, 883 F. Supp. 2d 146, 154 (D.D.C. 2012) (JDB), *aff'd sub nom. Price v. Union Loc. 25*, No. 12-7089, 2013 WL 1267137 (D.C. Cir. Mar. 22, 2013)). On matters of unfair labor practices, federal courts generally "must defer to the exclusive competence of the [NLRB]." *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 245 (1959).

Mr. Shanks argues that his case involves "hybrid" claims that may properly be considered by this Court. Pl.'s Reply at 9. Mr. Shanks is correct that some claims lie within the concurrent jurisdiction of the NLRB and the federal courts. *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 758 (D.C. Cir. 2019). However, this concurrent jurisdiction allows a federal court to decide "contractual claims" arising from an alleged breach of a collective bargaining agreement; it does not allow a court to supplant the NLRB's role in determining what constitutes an unfair labor practice. *See id.* Because Mr. Shanks's proposed retaliation claim is not the kind of "contractual claim" over which this court may exercise concurrent jurisdiction, he cannot proceed with that claim here.

For these reasons, Mr. Shanks's proposed NLRA claim would not withstand a motion to dismiss. Accordingly, the Court shall deny leave to amend to add this claim.

\*     \*     \*

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mr. Shanks's request for leave to amend his complaint is **GRANTED IN PART** and **DENIED IN PART**.  Mr. Shanks may file an amended complaint that (1) includes the factual allegations contained in his proposed amended complaint, Dkt. No. 43; and (2) adds a new race discrimination claim under 42 U.S.C. § 1981 against BAC, Mr. Driscoll, and Ms. Dubberly.  Any such amended complaint shall be filed on or before **July 31, 2026**.  Mr. Shanks's request for leave to amend is otherwise **DENIED**, and any amendments other than those allowed by this Memorandum Opinion and Order shall be stricken.

The Clerk of the Court is respectfully directed to mail a copy of this Memorandum Opinion and Order to the *pro se* Plaintiff at his address of record.

**SO ORDERED.**

**Dated:**  July 7, 2026

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

25